UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON et al.,

                Civil Action No. _____

                Petitioners,

      vs.                  **Petitioners' Memorandum of Law
in Support of their Petition to
Compel Arbitration**

ERIC AND DENISE FRANCE PROPERTIES, LLC,

                Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Of Counsel:

      Jeffrey S. Weinstein
      David A. Nelson
      Samuel B. Weiss
      Mound Cotton Wollan & Greengrass LLP
      One New York Plaza Fl. 44
      New York, New York 10004
      JWeinstein@moundcotton.com
      DNelson@moundcotton.com
      SWeiss@Moundcotton.com
      Tel: (212) 804-4200
      Fax: (212) 344-8066

      *Attorneys for Petitioners*

**Table of Contents**

Preliminary Statement.................................................................................................................1

Factual Background .....................................................................................................................4

I.          The Loss and Claim ........................................................................................................4

Argument ......................................................................................................................................4

I.          The Court Should Compel Arbitration ........................................................................4

           A.          Governing Law ....................................................................................................4

                       1.          The New York Convention.....................................................................5

                       2.          The FAA's General Provisions................................................................6

II.        Standard of Review..........................................................................................................7

III.       The Arbitration Agreement is Both Valid and Embraces the Parties' Dispute .................8

           A.          The Arbitration Agreement is Valid ..................................................................8

IV.        The Policy's Broad Delegation Clause Mandates that the Arbitration Tribunal
Determine all Issues, Including the Agreement's Validity and Scope .........................................10

Conclusion ..................................................................................................................................11

## <u>Table of Authorities</u>

Page(s)

**<u>Cases</u>**

<u>ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.</u>,
  307 F.3d 24 (2d Cir. 2002)........................................................................................ 8

<u>AT & T Techs., Inc. v. Commc'ns Workers of Am.</u>,
  475 U.S. 643 (1986)............................................................................................. 8, 10

<u>Badgerow v. Walters</u>,
  142 S. Ct. 1310 (2022)............................................................................................. 4

<u>Bell v. Cendant Corp.</u>,
  293 F.3d 563 (2d Cir. 2002)................................................................................... 10

<u>Bensadoun v. Jobe-Riat</u>,
  316 F.3d 171 (2d Cir. 2003)..................................................................................... 7

<u>Best Concrete Mix Corp. v. Lloyd's of London Underwriters</u>,
  413 F. Supp. 2d 182 (E.D.N.Y. 2006) .................................................................... 9

<u>Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc.</u>,
  2019 WL 760802 (S.D.N.Y. Feb. 6, 2019)............................................................ 11

<u>Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC</u>,
  967 F. Supp. 2d 756 (S.D.N.Y. 2013)..................................................................... 8

<u>Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.</u>,
  58 F.3d 16 (2d Cir. 1995)...................................................................................... 10

<u>Com. Risk Reinsurance Co. v. Sec. Ins. Co. of Hartford</u>,
  526 F. Supp. 2d 424 (S.D.N.Y. 2007)..................................................................... 9

<u>Corpus Christi Indep. Sch. Dist. v. Amrisc, LLC</u>,
  2019 WL 2051696 (E.D.N.Y. May 9, 2019) ......................................................... 11

<u>Crystal Pool AS v. Trefin Tankers Ltd.</u>,
  2014 WL 1883506 (S.D.N.Y. May 9, 2014) ........................................................... 9

<u>David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)</u>,
  923 F.2d 245 (2d Cir. 1991)..................................................................................... 6

<u>First Options of Chicago, Inc. v. Kaplan</u>,
  514 U.S. 938 (1995)............................................................................................... 10

In re Am. Exp. Fin. Advisors Sec. Litig.,
   672 F.3d 113 (2d Cir. 2011)............................................................................... 10

In re MF Glob. Holdings Ltd.,
   569 B.R. 544 (Bankr. S.D.N.Y. 2017) ................................................................. 5

Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machines, Loc. Union No.
550, Int'l Bhd. of Teamsters,
   167 F.3d 764 (2d Cir. 1999) ............................................................................... 8

Int'l Eng'g & Constr. S.A. v. Baker Hughes,
   399 F. Supp. 3d 194 (S.D.N.Y. 2019).............................................................. 5, 6

Katz v. Cellco P'ship,
   794 F.3d 341 (2d Cir. 2015)............................................................................... 7

Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co.,
   2005 WL 1216292 (S.D.N.Y. May 23, 2005) .................................................... 6

Matter of DeVera,
   32 N.Y.3d 423 (2018) ...................................................................................... 11

McDermott Int'l, Inc. v. Lloyds Underwriters of London,
   944 F.2d 1199 (5th Cir. 1991) ........................................................................... 5

Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Ins.,
   760 F. Supp. 1036 (E.D.N.Y. 1991) .................................................................. 9

Mehler v. Terminix Int'l Co. L.P.,
   205 F.3d 44 (2d Cir. 2000).............................................................................. 11

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
   473 U.S. 614 (1985) .......................................................................................... 6

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
   460 U.S. 1 (1983).............................................................................................. 10

PaineWebber Inc. v. Bybyk,
   81 F.3d 1193 (2d Cir. 1996)....................................................................... 8, 10, 11

Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
   388 U.S. 395 (1967).......................................................................................... 7

Scherk v. Alberto-Culver Co.,
   417 U.S. 506 (1974).......................................................................................... 5

Syncora Guarantee Inc. v. HSBC Mexico, S.A.,
   861 F. Supp. 2d 252 (S.D.N.Y. 2012)............................................................... 7

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,
  241 F.3d 135 (2d Cir. 2001).................................................................................. 6

WorldCrisa Corp. v. Armstrong,
  129 F.3d 71 (2d Cir. 1997).................................................................................. 10

Zelnik v. Fashion Inst. of, Tech.,
  464 F.3d 217 (2d Cir. 2006).................................................................................. 8

**Statutes**

9 U.S.C. § 3 ............................................................................................... 1, 7, 12

9 U.S.C. § 4 ........................................................................................... 1, 7, 11, 12

9 U.S.C. § 202 .................................................................................................... 6

9 U.S.C. § 203 .................................................................................................... 4

9 U.S.C. § 206 ................................................................................................. 1, 6

9 U.S.C. § 208 .................................................................................................... 5

9 U.S.C. §§ 1-16 ............................................................................................... 4, 6

9 U.S.C. §§ 201-08 ............................................................................................. 4

**Rules**

Fed. R. Civ. P. 56(c) ............................................................................................ 7

Petitioners, Certain Underwriters at Lloyd's, London, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company Of Arizona, United Specialty Insurance Company, Lexington Insurance Company, Safety Specialty Insurance Company, HDI Global Specialty SE ("HDI"), and Old Republic Union Insurance Company (collectively, the "Insurers"), by and through their attorneys, Mound Cotton Wollan & Greengrass LLP, respectfully submit this memorandum of law in support of their Petition, pursuant to 9 U.S.C. §§ 3 and 4, and 9 U.S.C. § 206, for an order compelling Respondent's participation in the arbitration process demanded under the binding Arbitration Agreement to which the Insurers and Respondents are parties and to stay all litigation pending arbitration.

## Preliminary Statement

This is an insurance dispute. Petitioners issued two insurance policies (the "Policies") to Respondents. The first, with account ID 693422, was issued for the one-year period commencing on December 18, 2019. The second, with account ID 793082, was issued for the one-year period commencing on December 18, 2020. Following damage to some of its properties during Hurricanes Zeta and Ida, Respondent made an insurance claim under the Policies.

The Policies contains an arbitration agreement:

> ARBITRATION CLAUSE: All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.
>
> Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the

1

Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred. If the Arbitrators cannot agree to an Umpire, either may request the selection be made by a judge of a New York court.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

Each party will pay its chosen Arbitrator, and also bear the other expenses of the Arbitration and Umpire equally.

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

A decision agreed to by any two members of the Arbitration Tribunal shall be binding. The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

See Ex. 1 to the October 24, 2022 Decl. of Jeffrey S. Weinstein at p. 35; Ex. 2 to the Weinstein

Decl. at p. 36).

Under this provision, "all matters in difference between" the Insurers and Respondent "in

relation to this insurance, shall be referred to an Arbitration Tribunal." And the arbitration

agreement provides that the seat of the arbitration must be in New York, and that the tribunal must apply New York law.

Respondent has failed to support its claims in any meaningful way. Respondent's claim for Hurricane Zeta damage is premised solely on its public adjuster's reports which – prepared *after* Hurricane Ida – presumed to discern between the damage caused by two hurricanes which occurred a year apart. Using this unsubstantiated and late adjustment, Respondent presented to the Insurers a property damage claim over four million dollars more than that found by the Insurers' timely adjustment. Respondent's claims disregard preexisting conditions at the Properties, as well as the applicable policy terms and exclusions.

Respondent has also provided no evidence in support of its claim for business interruption losses. Considering these shortcomings in Respondent's claim, the Insurers have never received satisfactory proof of loss, and Respondent's ancillary claim for over four million dollars in additional "bad faith" penalties is untenable.

Bottom line: the parties disagree over the proper amount of loss, so the Insurers demanded arbitration. See Ex. 3 to the Weinstein Decl. And all these disputes fall within the Arbitration Agreement's scope of "all matters in difference," which – contractually – Respondent must arbitrate. Respondent has failed to do so and has already rejected the Policies' arbitration provision. See Ex. 4 to the Weinstein Decl. at p. 3 (the "Godbey Letter").[1]

This Court should not allow Respondent to avoid the arbitration agreement for which it bargained. Instead, consistent with the Federal Arbitration Act (the "FAA"), and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or the "Convention"), this Court should compel Respondent to arbitrate any disputes between Respondent and the Insurers.

---

[1] See also Ex. 5 to the Weinstein Decl. at p. 5.

**Factual Background**

I.      **The Loss and Claim**

This dispute arises from alleged property damage to some of Respondent's insured locations in connection with Hurricanes Zeta and Ida. Respondent seeks insurance proceeds from all Insurers, collectively, under the coverages, terms and conditions set forth in the Policies – both of which are surplus lines policies – for alleged losses including property damage and lost business income.

According to Respondent, the combined value of its Zeta and Ida losses are $4,999,652.14. <u>See</u> Godbey Letter at p. 2. Respondent also concedes that the Insurer's valuation of its claim is a fraction of that. <u>See</u> Godbey Letter at pp. 2-3. Respondent further seeks $2,075,039.43 in "statutory penalties," $649,954.78 in "costs," and $1,718,768.26 in attorney's fees. <u>See</u> Godbey Letter at p. 6. The Insurers deny that Respondent is entitled to any extracontractual damages.

At all times relevant, the Insurers, who subscribe to the Policies, have acted in concert in the investigation, evaluation, and payment made subject of the Respondent's claims.

**Argument**

I.      **The Court Should Compel Arbitration**

A.      **Governing Law**

Two separate chapters of the United States Code require Respondent to arbitrate its dispute with the Insurers. The first is the FAA: 9 U.S.C. §§ 1-16. The second is 9 U.S.C. §§ 201-08, which implements the New York Convention's provisions.[2] As discussed below, the

---

[2] While the FAA does not – on its own – confer subject matter jurisdiction, the Convention does. <u>Compare</u> <u>Badgerow v. Walters</u>, 142 S. Ct. 1310, 1314 (2022) (Section 4 of the FAA "instructs a federal court to 'look through' the petition [to compel arbitration] to the 'underlying substantive controversy' between the parties") <u>with</u> 9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460

4

Convention applies here because it involves a commercial contract between a domestic and foreign entity. But the FAA's general provisions apply too, to the extent they do not conflict with the Convention. See 9 U.S.C. § 208; Int'l Eng'g & Constr. S.A. v. Baker Hughes, 399 F. Supp. 3d 194, 199 (S.D.N.Y. 2019).

1.      **The New York Convention**

The New York Convention "is an international treaty mandating that courts in signatory states 'shall, at the request of one of the parties [to an arbitration agreement], refer the parties to arbitration.'" In re MF Glob. Holdings Ltd., 569 B.R. 544, 551 (Bankr. S.D.N.Y. 2017) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 527 (1974)). Its goal and principal purpose is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974).

More than one hundred countries have signed the Convention, including the United States, the Federal Republic of Germany, and the United Kingdom of Great Britain and Northern Ireland. Germany has been a Contracting State since 1961.[3] The United States has been a Contracting State since 1970. McDermott Int'l, Inc. v. Lloyds Underwriters of London, 944 F.2d 1199, 1208 (5th Cir. 1991) (tracing history of the Convention). And the United Kingdom has been a Contracting State since 1975.[4]

---

of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.").

[3] See generally, https://newyorkconvention1958.org/index.php?lvl=cmspage&pageid=11&menu=577&opac_view=-1.

[4] See generally, https://newyorkconvention1958.org/index.php?lvl=cmspage&pageid=11&menu=612&opac_view=-1.

The Convention applies to arbitration proceedings arising out of commercial legal relationships where at least one foreign party is involved. See 9 U.S.C. § 202. Here, HDI is a German entity, Certain Underwriters are U.K. entities, and Respondents are domestic entities; the Convention therefore applies. Cf. Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co., 2005 WL 1216292, at *2 (S.D.N.Y. May 23, 2005) (applying Convention to dispute between Bermuda and Iowa corporations).

Moreover, the strong federal policy favoring arbitration applies equally to international transactions. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985) (The New York Convention reinforces "the emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce.").

Section 206 of the Convention provides that a "court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206. The "threshold question is whether a valid agreement to arbitrate exists in the context of an international commercial agreement." International Engineering, 399 F. Supp. 3d at 199; 9 U.S.C. § 202. And if a court finds that such an agreement exits, it "must compel arbitration of any dispute falling within the scope of the agreement pursuant to the terms of the agreement." U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 146 (2d Cir. 2001).

2.     **The FAA's General Provisions**

Chapter One of the FAA's general provisions applies to any arbitration agreement involving interstate or international commerce, including commerce involving U.S. Territories. See 9 U.S.C. § 1; see also David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London), 923

6

F.2d 245, 249 (2d Cir. 1991) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402 (1967), that the FAA "applies in federal court to [] suits which relate to contracts involving interstate or international commerce").

Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Thus, if a court determines that there is a valid written arbitration agreement and one party has refused to arbitrate under it, the court "*shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). And Section 3 of the FAA requires courts to stay litigation when the parties' claims have been referred to arbitration. See 9 U.S.C. § 3. This mandatory stay is consistent with the FAA's "statutory scheme and pro-arbitration policy." Katz v. Cellco P'ship, 794 F.3d 341, 345 (2d Cir. 2015) ("The plain language [of 9 U.S.C. § 3] specifies that the court 'shall' stay proceedings pending arbitration, provided an application is made and certain conditions are met. It is axiomatic that the mandatory term 'shall' typically creates an obligation impervious to judicial discretion.") (cleaned up).

II.     **Standard of Review**

District courts in the Second Circuit apply the summary judgment standard when considering a motion to compel arbitration. See Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); Syncora Guarantee Inc. v. HSBC Mexico, S.A., 861 F. Supp. 2d 252, 258 (S.D.N.Y. 2012). Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). Therefore, an order compelling arbitration will be appropriate if there is no genuine issue as to any material fact about the dispute's arbitrability.

See, e.g., Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013).

When the moving party has documented particular facts in the record, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" to defeat a motion to compel arbitration. See Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 224 (2d Cir. 2006). Whether the opposing party believes the "dispute to be arbitrable is irrelevant to the arbitrability" of the claims. See Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machines, Loc. Union No. 550, Int'l Bhd. of Teamsters, 167 F.3d 764, 769 (2d Cir. 1999).

The Second Circuit follows a two-part test when determining the arbitrability of claims: (1) whether the parties have entered into a valid agreement to arbitrate; and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement. ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002). But "the parties themselves may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable." PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996); AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986) (parties may agree to arbitrate arbitrability). Therefore, if the parties' contract evidences their intent to submit questions of arbitrability to the arbitrators, the court need not reach part two of this two-part test.

III.    **The Arbitration Agreement is Both Valid and Embraces the Parties' Dispute**

A.    **The Arbitration Agreement is Valid**

Article II of the Convention lays out which arbitration agreements are subject to the Convention. It states, in relevant part:

> 1.    Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal

8

> > relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
>
> 2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

The Convention, Article II.

Moreover, this Court has routinely acknowledged jurisdiction where one of the parties to an arbitration agreement is domiciled outside the United States. Crystal Pool AS v. Trefin Tankers Ltd., 2014 WL 1883506, at *1–2 (S.D.N.Y. May 9, 2014) (citing Com. Risk Reinsurance Co. v. Sec. Ins. Co. of Hartford, 526 F. Supp. 2d 424, 427 (S.D.N.Y. 2007)); see also Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Ins., 760 F. Supp. 1036 (E.D.N.Y. 1991).

Here, the Policies to which the Insurers and Respondent are all parties contain mandatory arbitration agreements. Further, those arbitration agreements dictate that arbitration must be held in New York and that the arbitration is subject to New York law. See Ex. 1 to the Weinstein Decl. at 35; Ex. 2 to the Weinstein Decl. at 36). And this dispute arises out of a commercial legal relationship. See, e.g., Best Concrete Mix Corp. v. Lloyd's of London Underwriters, 413 F. Supp. 2d 182, 188 (E.D.N.Y. 2006) (presumption that insurance disputes are commercial). Finally, as discussed above, HDI is a German entity and Certain Underwriters are U.K. entities. Because there is at least one party to the arbitration agreement that is not a citizen of the United States, the arbitration agreement is governed by the Convention, and this Court has jurisdiction over the dispute.

Nor does Respondent dispute the Policies' validity; indeed, it has made an insurance claim under each. Petitioners therefore respectfully request that this Court find that a valid arbitration agreement exists between the parties.

IV.     **The Policy's Broad Delegation Clause Mandates that the Arbitration Tribunal Determine all Issues, Including the Agreement's Validity and Scope**

The FAA presumes that the issue of arbitrability should be resolved by the courts. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944–45 (1995). But the issue of arbitrability may be referred to the arbitrator if "there is clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator." Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002) (cleaned up); PaineWebber Inc., 81 F.3d at 1198 ("the parties themselves may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable.").

The federal policy favoring arbitration is well-established and requires courts "to construe arbitration clauses as broadly as possible." Collins & Aikman Prod. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995) (cleaned up). Any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983) (questions of arbitrability must be addressed "with a healthy regard for the federal policy favoring arbitration")). Therefore, an order compelling arbitration must be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT & T Technologies, Inc., 475 U.S. at 650.

The "existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) (cleaned up). Here, the arbitration agreement contains a clearly and unmistakable broad delegation clause that requires that "all matters in difference" in this dispute, including "its formation and validity, and whether arising during or after the

period of this insurance," be submitted to the arbitration panel. This necessarily includes threshold arbitrability issues. Because the broad delegation clause is valid and binding, **all** of Respondent's challenges, including those regarding arbitrability itself, are to be submitted to the arbitration panel. See, e.g., Matter of DeVera, 32 N.Y.3d 423, 435 (2018) (under New York law, "all means all") (cleaned up); see also Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44, 49 (2d Cir. 2000) ("any controversy or claim between [the parties] arising out of or relating to" the Agreement is "indisputably broad").

New York courts have interpreted this exact provision here, each time concluding that this wording requires arbitration of **all** disputes between the parties. See, e.g., Corpus Christi Indep. Sch. Dist. v. Amrisc, LLC, 2019 WL 2051696, at *3 (E.D.N.Y. May 9, 2019) ("the insurance policy contains a valid delegation clause that 'clearly and unmistakably delegate[s] the authority to adjudicate' plaintiff's claim to the arbitrator") (citing PaineWebber, 81 F.3d at 1195–96 (2d Cir. 1996)); see also Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc., 2019 WL 760802, at *5 (S.D.N.Y. Feb. 6, 2019) ("The arbitration clause is compulsory. It applies to '*all matters in difference* between the Insured and these Companies in relation to this insurance.' There exists in this situation a 'difference between the Insured and these Companies in relation to this insurance' – specifically, a dispute over whether the Policy covers the loss. Under the plain terms of the Policy, any such dispute must be arbitrated. Period. End of story.") (cleaned up).

## Conclusion

For these reasons, Petitioners respectfully request that this Court:

1.      Issue an order compelling arbitration pursuant to 9 U.S.C. §§ 4 and 206;

2.      Retain jurisdiction over this matter until a complete panel of arbitrators is formally constituted;

3.      Stay this litigation pending the outcome of the arbitration pursuant to 9 U.S.C. § 3; and

4.      Enjoin Respondent from litigating the subject matter of this lawsuit and the arbitration in any venue other than before an arbitration panel.


Dated:  New York, New York
        October 24, 2022

                                        By:     /s/ Jeffrey S. Weinstein
                                                Jeffrey S. Weinstein
                                                David A. Nelson
                                                Samuel B. Weiss
                                                Mound Cotton Wollan & Greengrass LLP
                                                One New York Plaza Fl. 44
                                                New York, New York 10004
                                                JWeinstein@moundcotton.com
                                                DNelson@moundcotton.com
                                                SWeiss@Moundcotton.com
                                                Tel: (212) 804-4200
                                                Fax: (212) 344-8066

                                                *Attorneys for Petitioners*